[No. 27116. Department One. August 11, 1938.]

HENRY F. GROENEVELD *et al., Appellants,* v. CAMANO BLUE POINT OYSTER COMPANY *et al, Respondents.*[1]

*Q. A. Kaune,* for appellants.

*Charles R. Denney,* for respondents.

SIMPSON, J.—The purpose of this action was to quiet title to certain second class tide lands that plaintiffs claim to own in Port Susan.

[1]Reported in 81 P. (2d) 826.

Plaintiffs allege that, by deed from the state dated August 8, 1912, their predecessor in interest acquired certain second class tide lands situated in front of, adjacent to, and abutting upon those portions of the United States government meander line described as follows, to-wit:

"All of the said meander line lying *in front* of Sections 35 & 36, in Township 32 North of Range 3, E. W. M., in Snohomish County, Washington, and Section 1, Township 31 North, Range 3 E. W. M. in said Snohomish County, and all that portion of the said meander line lying in front of the west side of Lot 1, in Section 12, Township 31, North, Range 3 E. W. M., described as follows, to-wit:

"Beginning at the meander corner to fractional Sections 1 and 12, Township 31 North Range 3, E. W. M.; thence South 21° West 4.00 chains; thence South 20° East 12.00 chains to an angle point in said meander line and terminal point of this description.

"Said tide lands have a total frontage of 319.50 lineal chains measured along said meander line as shown by a duly certified copy of the original field notes of said meander line on file in the office of the Commissioner of Public Lands at Olympia, Washington." (Italics ours.)

It is further alleged that the deed was made in compliance with the terms of a contract with the state, dated April 8, 1903, whereby the state had agreed to convey the tide lands described in the deed of August 8, 1912; that June 6, 1911, the state conveyed to plaintiffs' predecessor all tide lands of the second class lying between the line of mean low tide and the line of extreme low tide in front of the 319.50 lineal chains of the above described meander line; that these tide lands include all the tide lands situated above the line of extreme low tide southerly and easterly of the main channel of Port Susan and the slough at the head of Camano island known as Davis slough; that the defendants

claim to have title to the land so situated easterly and southerly of the main channel of Port Susan and of Davis slough; and plaintiffs prayed that their title to the aforementioned lands be quieted.

In their answer, defendants deny the allegations of the complaint, except that portion which alleged that they claimed some right, title, or interest in the lands described in the complaint.

For a further answer, the defendants alleged that March 21, 1901, the state sold to defendants' predecessor in interest the following described tide lands of the second class situated in Island county, Washington, to-wit:

"All tide lands of the Second Class owned by the State of Washington, situate *in front of*, adjacent to or upon that portion of the government meander line lying in front of the following described upland:

"Sections five (5) and eight (8), township thirty-one (31) North, range three (3) east of the Willamette Meridian, and Sections twenty-six (26), twenty-seven (27), twenty-eight (28), twenty-nine (29) and thirty-two (32) township thirty-two (32) North, Range three east W. M., having a total frontage of 584.32 lineal chains, more or less, measured along the meander line, according to a certified copy of the government field notes of the survey thereof, on file in the office of the Commissioner of Public Lands, at Olympia, Washington." (Italics ours.)

It was also alleged that, on the 6th day of June, 1911, the state conveyed to the defendants' predecessor in interest all tide lands of the second class owned by the state lying between the line of mean low tide and the line of extreme low tide in front of the property just described. Plaintiffs by their reply put in issue the allegations to which we have just referred.

The case was tried to the court, and judgment rendered in favor of defendants. The cause against Island county was dismissed without objection.

The record discloses the following facts: The tide lands owned by the parties to this action lie in the northerly, easterly, and northeasterly portion of the bay known as Port Susan. The uplands and second class tide lands, lying between the line of ordinary high tide and the line of mean low tide, of plaintiffs are all situated in Snohomish county on the east side of the port, and those of defendants are all situated on Camano island in Island county, on the north and northwesterly portion of Port Susan.

Prior to 1911, the state was only authorized to sell tide lands from the line of ordinary high tide to the line of mean low tide. Laws of 1897, chapter 89, § 4(2), p. 230; Rem. & Bal. Code, § 6641; *State v. Scott,* 89 Wash. 63, 154 Pac. 165. Laws of 1911, chapter 36, § 2, p. 130, Rem. Rev. Stat., § 7834, granted a preferential right to the purchasers, their grantees, or successors in interest of tide lands of the second class, lying between the line of ordinary high tide and the line of mean low tide, to purchase the tide lands, in front of those already owned, between the line of mean low tide and extreme low tide, provided that such preference were exercised within ninety days after the 1911 act became effective.

In the two mentioned deeds dated in 1911, the predecessors in interest of appellants and respondents asserted their preferential right within the time prescribed by the 1911 statute, and thus obtained the second class tide lands in front of their property between the line of mean low tide and the line of extreme low tide.

Northeast of Port Susan lies Leque island, bounded on the east by a slough known as South pass, on the west by Davis slough, and on the northeast by West pass. The South and West passes are outlets of the Stillaguamish river, though most of the river water flows through West pass northwesterly into Skagit bay.

South pass and Davis slough extend in a more or less defined channel in a southerly and southwesterly course for a considerable distance. To the southwest of Davis slough is a channel known as Iverson slough connected with Livington bay, which is in a northwesterly direction from Port Susan. All of the area enclosed in that part of Port Susan in controversy is composed of tide lands. The channels of South pass and Davis slough extended divide the northeasterly portion of Port Susan into approximately equal portions, and it is the property lying between the channels that is in controversy.

■ Appellants' contention is that the outer boundary of respondents' land should be the channel of Davis slough. He predicates that argument upon our hold-ing in *State v. Scott, supra,* which cited with approval *State ex rel. Lehman v. Bridges,* 24 Wash. 363, 64 Pac. 518, where we said:

"It is our opinion that the legislature intended by the words 'in front of' to include only such lands as lie *adjoining and in front of* the limits of an incorporated city and it was not intended that the words should apply to lands which may happen to lie in front of a city in fact, but across a channel of navigable water and upon an opposite shore."

However, the evidence does not disclose that Davis slough is a navigable channel. Some witnesses testified that the slough is not as deep now as it was several years ago, and that freight boats navigated it for the purpose of stopping at warehouses maintained by farmers, and also for passing from Port Susan to Skagit bay, and that there was always some water in the slough. However, other witnesses testified that Davis slough was never navigable by any boats at low tide, and that, even with small boats, one could not get through in some places without getting out and pushing

the boat. One witness who had lived in the vicinity stated that there was no navigable channel in Davis slough, or in its extension called Iverson slough.

We conclude from the evidence just related that the trial court was correct when he said in referring to Davis slough:

"I do not think there is any proof that it is navigable; that it is capable of being used practically for the carriage of commerce."

With this conclusion in mind, we hold that the original deed from the state conveying the tide lands to respondents' predecessors in interest was not intended to convey lands whose outer boundaries would be the channel of Davis slough, but did grant whatever tide lands the state owned in Island county.

In order to ascertain what tide lands were, in fact, conveyed, it becomes necessary to ascertain the boundaries of the two counties.

Rem. Rev. Stat., § 3955 [P. C. § 1553], defines the west boundary of Snohomish county running north from Admiralty inlet as follows:

". . . thence northerly along the channel of said inlet to the entrance of Port Susan, including Gendey Island; thence up the main channel of Port Susan to the mouth of the Steilaguamish River; thence northwesterly through the channel of the slough at the head of Camano Island, known as Davis Slough; thence northerly to the place of beginning."

The boundaries of Island county are described in Rem. Rev. Stat., § 3939 [P. C. § 1524], in the following manner:

"The boundaries of Island county shall include all of the islands known as Whidby, Camano, Smith's Deception and Ure's and shall extend into the adjacent channels to connect with the boundaries of adjoining counties as defined by statute."

It will be observed that the statute provides that the west Snohomish county line runs up the main channel of Port Susan to the mouth of the Stillaguamish river, and thence northwesterly through the channel of the Davis slough.

The evidence concerning the location of the main channel of Port Susan is not very definite. However, the direction mentioned in the statute leads to the mouth of the Stillaguamish river, which is South pass, that being the only outlet to the south from the river. Then, too, the Snohomish county line would have to run to South pass in order thereafter to go in a northwesterly direction to Davis slough, as stated in Rem. Rev. Stat., § 3955.

It is clear that the main channel of Port Susan, which is the common boundary of the two counties, does not enter either Iverson slough or Davis slough, but does run from deep water in a northerly or northeasterly direction to the outlet of the Stillaguamish river known as South pass.

Appellants contend that such finding would cut over the uplands of Leque island, but that would not be the necessary conclusion. The term northwesterly implies only a general direction and does not preclude the conclusion at which we have arrived.

"The rule that the intention of the parties to a deed is the test by which to determine its legal effect applies to the description, as well as to other parts of the instrument, . . ." 8 R C. L. 1071, § 126.

■ There is no ambiguity in either of the deeds in question. Moreover, the tide lands in controversy were deeded to respondents' predecessor in interest prior to the time that appellants' predecessor in interest acquired title.

The principle relative to notice of the lands conveyed by a prior deed is stated in 9 C. J. 229, as follows:

"Where there is a clash of boundaries in two deeds from the same grantor, the title of the grantee in the deed first executed is, to the extent of the conflict, superior; and the rule applies as well to grants by the state as to conveyances by an individual."

We followed that rule in *Lundell v. Allen & Nelson Mill Co.*, 57 Wash. 150, 106 Pac. 626, where we said:

"The deed running to the appellant was a prior deed, and of course controls the subsequent deed to the respondents where there is any conflict."

There is no need in this case to apply any rules relative to definite descriptions of the land other than contained in the deeds, which plainly indicate the intention of the state to deed certain lands in the counties named.

The trial court correctly decided that the tide lands in question belonged to the respondents, and that the boundary line of the property belonging to respondents and to appellants was the line dividing Snohomish and Island counties.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and GERAGHTY, JJ., concur.